UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21368-BLOOM/Louis

ADRIANO JIMENEZ,
*as Personal Representative of the*
*Estate of Marisela Fernandez*,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant United States of America's ("USA" or "Defendant") Motion for Summary Judgment, ECF No. [35] ("Motion"). Plaintiff Adriano Jimenez ("Plaintiff"), as Personal Representative of the Estate of Marisela Fernandez ("Fernandez"), filed a response, ECF Nos. [41], [42] ("Response"), to which Defendant filed a reply, ECF No. [46] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, including the Response and Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.    BACKGROUND AND MATERIAL FACTS[1]

On March 30, 2020, Plaintiff sued Defendant USA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, following his wife Fernandez's death due to the negligence

---

[1] With regard to the instant Motion, Defendant has filed its Statement of Undisputed Facts, ECF No. [34], ("Defendant's SMF"), and a Memorandum of Law in Support, ECF No. [35]. Plaintiff filed a Response, ECF No. [42], and Memorandum of Law in Support, ECF No. [41], together with his Statement of Facts, ECF No. [43] ("Plaintiff's SMF Response"). Finally, Defendant filed a Reply in support of its Motion, ECF No. [46], and a Reply Statement of Material Facts, ECF No. [45] ("Defendant's SMF Reply"). The Court notes that neither Defendant nor Plaintiff have complied with the Local Rules or the procedures set forth in

of the Department of Veterans Affairs Medical Center ("VA") in Miami. ECF No. [1] ("Complaint"). The Complaint alleges that Fernandez, who suffered from amyotrophic lateral sclerosis ("ALS"), was admitted to the VA in August, 2017 with an acute decline in dysphagia and underwent surgery for the placement of a percutaneous gastro-jejunostomy tube ("PGJ"). *Id.* ¶¶ 9-10. After the surgery, Fernandez needed to use the restroom and the hospital staff used a Hoyer lift to move her. *Id.* ¶ 11. Fernandez suffered from uncontrolled pain as a result. *Id.* Shortly thereafter, Fernandez's condition began to decline, and she underwent diagnostic testing that revealed free abdominal air, a significantly collapsed stomach, and a small to moderate amount of fluid in the dependent portions of the pelvis. *Id.* ¶¶ 13-14. At 2:41 a.m. on the morning after her initial surgery, the PGJ was removed because it had dislocated and there was marked chemical peritonitis with fluid. *Id.* ¶ 15. The next day, Fernandez became bradycardic and nonresponsive, and was pronounced dead. *Id.* ¶ 17. Fernandez's autopsy revealed that she died of complications of sepsis with septic shock with acute aspiration pneumonia due to complications of severe acute peritonitis due to the dislodged PGJ tube placed for severe dysphagia as a result of ALS. *Id.* ¶ 18.

Based on these allegations, the Complaint asserts one count of negligence against the USA as a result of the following:

i.     failing to properly place the PGJ tube and secure it upon placement;

ii.    failing to use proper and recommended medical protocols for lifting and/or moving a patient in or out of bed utilizing a Hoyer lift or other device when the patient has a PGJ tube and/or other abdominal intervention;

iii.   failing to properly respond and communicate the significance of Fernandez's reports of pain in a timely manner;

iv.    failing to stop feedings in a timely manner upon reports of pain in the area where the PGJ tube was placed;

---

the Court's Scheduling Order with respect to motions for summary judgment. *See* ECF No. [14]; S.D. Fla. L.R. 56.1.

v.       failing to properly address issues associated with extensive peritonitis when laparoscopically examining and removing the PGJ tube, including but not limited to converting the procedure to an open and ensuring the area was properly irrigated and the peritonitis addressed;

vi.      failing to ensure proper follow-up and monitoring post-removal of the PGJ tube; and

vii.     deviations form the acceptable standard of care by the nursing staff and/or physicians and/or employees of Defendant causing Fernandez to become septic and causing pervasive peritonitis and ultimately death.

*Id.* ¶ 21.

Defendant filed an answer and denied the allegations of negligence and causation. *See* ECF No. [8]. The Court entered its Scheduling Order, setting January 26, 2021, as the deadline for the parties to disclose experts and exchange expert witness summaries or reports. ECF No. [14] at 2. Defendant timely disclosed three experts and provided Plaintiff its expert reports. Defendant's SMF ¶ 9.[2] On January 26, 2021, the expert disclosure deadline, Plaintiff filed a Motion to Extend Deadline for Plaintiff's Expert Disclosures, ECF No. [24], which the Court denied for failure to comply with the pre-filing conference requirement in Local Rule 7.1(a)(3), *see* ECF No. [26]. Also on January 26, 2021, Plaintiff filed a Notice of Disclosing Expert Witnesses, ECF No. [25] ("Notice"), in which Plaintiff listed two experts, Dr. Eroston A. Price, the doctor who performed Fernandez's autopsy and who Plaintiff expects to offer opinions as to causation, and Dr. Steven Lee-Kong, who Plaintiff expects to offer opinions as to the standard of care for hospital staff and the doctor who performed Fernandez's surgeries.[3]

---

[2] Where a fact is undisputed by the opposing party, the Court cites only to the originating Statement of Facts.

[3] With respect to Dr. Lee-Kong, the Notice attaches a copy of his curriculum vitae ("CV"), and states that "[t]he doctor's report is incoming and will be provided upon receipt." ECF No. [25] at 2. Defendant contends that Plaintiff provided Defendant with the CV of a potential expert, but no expert report, Defendant's SMF ¶ 10, but Plaintiff's expert disclosure was filed on January 26, 2021, the expert disclosure deadline. Surprisingly, Plaintiff has simply admitted the timeline as set out by Defendant, even though the

According to the Scheduling Order, the deadline for the parties to exchange rebuttal expert witness summaries or reports was February 9, 2021. ECF No. [14] at 2. Plaintiff did not offer any rebuttal to Defendant's experts. Defendant's SMF ¶ 12. The deadline for all discovery, including expert discovery, was February 23, 2021. ECF No. [14] at 2. Plaintiff did not seek extensions of any other deadlines in the Scheduling Order. Defendant's SMF ¶ 12. On March 8, 2021, Plaintiff received and sent Dr. Lee-Kong's summary of opinion to Defendant, Plaintiff's SMF ¶ 16, almost two weeks after the close of discovery in this case, and forty-one (41) days after the expert disclosure deadline.

## II.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*,

---

record reflects that Plaintiff's expert-related filings were made on January 26, 2021 and not January 27, 2021.

934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own

affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations

6

needed to resolve this conflict; only the jury may do so.").

## III.     DISCUSSION

In the Motion, Defendant argues that it is entitled to summary judgment because Plaintiff has failed to timely produce an expert report concerning the applicable standard of care. Plaintiff responds that, at the time of filing the Motion, he had not yet received Dr. Lee-Kong's summary report. He also argues that the failure to timely provide the report was a result of excusable neglect related to certain COVID-19 related office absences and communication problems with Dr. Lee-Kong. Plaintiff contends that Defendant should not suffer any prejudice or additional costs by the delay, since standard of care opinions regarding the movement of Fernandez in the course of a Hoyer lift transport are operative facts understood since the onset of litigation. As such, Plaintiff argues that Defendant's Motion is due to be denied.

"The United States is immune from suit unless it consents to be sued." *Cranford v. United States*, 466 F.3d 955, 957-58 (11th Cir. 2006) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)). The FTCA waives the sovereign immunity of the United States for claims brought against it

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

"In FTCA actions, liability is determined under the law of the state in which the alleged negligence occurred." *Robinson v. United States*, 462 F. App'x 885, 886 (11th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)). In Florida, in order to prove medical negligence, "the claimant shall have the burden of proving by the greater weight of the evidence that the alleged actions of the health

care provider represented a breach of the prevailing standard of care for that health care provider." Fla. State. § 766.102(1). The prevailing standard of care for a given health care provider "shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." *Id*. "If a defendant comes forward with evidence showing that a medical provider did not breach the applicable standard of care, then the burden shifts to the Plaintiff to submit evidence showing that there is a genuine issue of material fact on that issue." *Burt v. United States*, No. 5:07-cv-195-Oc-10GRJ, 2009 WL 10713837, at *3 (M.D. Fla. Sept. 30, 2009) (citing *Thomas v. Berrios*, 348 So. 2d 905, 909-910 (Fla. 2d DCA 1977)). Thus, in order "[t]o prevail in a medical malpractice action, a plaintiff must identify the standard of care owed by the [provider], produce evidence the [provider] breached the duty to render medical care in accordance with the requisite standard of care, and establish that the breach proximately caused the injury alleged." *Cagle v. United States*, No. 3:15-cv-0350-J-20JBT, 2017 WL 6368249, at *3 (M.D. Fla. Aug. 3, 2017) (quoting *Torres v. Sullivan*, 903 So. 2d 1064, 1067 (Fla. 2d DCA 2005)). "Generally, the standard of care in medical malpractice cases must be determined by consideration of expert testimony." *Id.*, at *3 (citing *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995)).

### A.  Late disclosure

At the outset, the Court notes that Plaintiff does not dispute that under Florida law he is required to provide expert testimony to establish the relevant standard of care. Rather, Plaintiff seeks to justify his failure to comply with the deadlines set forth in the Court's Scheduling Order by belatedly claiming excusable neglect. However, excusable neglect is not the governing standard. According to Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[4] Here, Plaintiff's failure to timely provide Dr. Lee-Kong's support is not substantially justified. Notably, Plaintiff waited until the day of the expert disclosure deadline to request an extension from the Court, and when the Court denied the request based on the failure to comply with the Local Rules, Plaintiff sought no further relief with respect to the disclosure deadline, or any other deadlines set forth in the Scheduling Order. Moreover, Plaintiff waited until the filing of his Response to bring to the Court's attention the purported difficulties in communicating with Dr. Lee-Kong and COVID-19 related office closings. However, the Court also notes that Defendant did not move for sanctions under Rule 37 before the close of discovery, nor has Defendant sought to strike Dr. Lee-Kong as an expert in this case. Rather, Defendant filed its Motion the day after the close of discovery and three weeks before the dispositive motions deadline, seeking to capitalize upon Plaintiff's procedural violations. The Court therefore does not condone either party's conduct in this case.

### B. Applicable standard of care and evidence of negligence

Even so, the Court need not determine whether Plaintiff's failure to properly disclose is harmless because, even assuming Dr. Lee-Kong's summary report was timely provided, Dr. Lee-Kong does not provide opinions on the standard of care as to any of Plaintiff's theories of negligence, nor does he specifically identify *any* deviation from the requisite standard of care.

---

[4] In determining whether the failure to disclose is substantially justified or is harmless, a court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010) (quoting *Warner v. Ventures Health Care of Gainesville, Inc.*, 2001 WL 36098008, at *1 (M.D. Fla. Aug. 1, 2011) (internal citations and quotations omitted).

As pleaded in the Complaint, Plaintiff claims that Defendant was negligent in (1) placing and securing the PGJ tube, (2) using proper protocols for lifting and moving a patient with a PGJ tube using a Hoyer lift, (3) responding to Fernandez's reports of pain timely, (4) stopping feedings upon reports of pain in the area of the PGJ tube, (5) addressing the issues of peritonitis, (6) ensuring proper follow-up and monitoring after removal of the PGJ tube, and (7) deviating from the standard of care causing Fernandez's sepsis, pervasive peritonitis, and ultimately death. *See* ECF No. [1] ¶ 21.

    i.   <u>Placing and securing the PGJ tube</u>

In Dr. Lee-Kong's summary report, he states the following:

> While dislodgement of gastrostomy tubes is a known complication of their use, the risks of dislodgement can be minimized by careful attention during their placement, patient movement and manipulation of the tube. In this case, it appears that the tube was dislodged on or around the time she was being moved on 8/9/2017.

ECF No. [41-1] at 1. While these statements characterize generally relevant factors in avoiding the displacement of PGJ tubes, they do not adequately establish the standard of care for placing or securing a PGJ tube. Dr. Lee-Kong offers no opinion with respect to the standard of care applicable to the placement of a PGJ tube, or how the placement of Fernandez's PGJ tube breached the applicable standard of care in this case.

In turn, Defendant has provided expert evidence to indicate that the standard of care with respect to the placement of the PGJ tube was not breached in this case. Defendant provides the opinion of Dr. Symons, a board-certified general surgeon and board-certified surgical critical care physician, whose report states, in pertinent part, that the initial PGJ "procedure was performed without complication and the tube was confirmed to be in good position with the aid of fluoroscopy." ECF No. [34-3] at 1. Plaintiff has produced no testimony or record evidence to rebut Dr. Symons' opinion with respect to the placement and securing of the PGJ tube, such that a

genuine issue of material fact would still exist as to whether the standard of care for placement of Fernandez's PGJ tube was breached in this case. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim based on the theory that the PGJ tube was negligently placed and secured.

ii.   Protocols for lifting and moving a patient with a PGJ tube using a Hoyer lift

Similarly, while Dr. Lee-Kong's summary report provides that the risk of dislodgment can be minimized by careful attention during movement of a patient, he does not provide an opinion with respect to the standard of care applicable to the movement of a patient with a PGJ tube, nor does he opine regarding any deficiency in moving Fernandez so as to minimize the risks of dislodgment in this case. In fact, Dr. Lee-Kong specifically acknowledges that dislodgment is a known complication, and notes further that "[d]etails surrounding how [Fernandez] was moved should be more clearly characterized further." ECF No. [41-1] at 1. Although Dr. Lee-Kong opines that the PGJ tube was dislodged on or around the time Fernandez was being moved, he offers no opinion with respect to the proper movement of a patient with a PGJ tube using a Hoyer lift, or how the methods used to move Fernandez breached the applicable standard of care in this case.[5]

According to Defendant's expert, Dr. Symons,

[u]nfortunately, the tube became dislodged at some point after the procedure despite being anchored and adherent to the abdominal wall with a self retaining loop and balloon. **This is a known complication of a percutaneously placed gastro jejunal tube[] and was explicitly explained to the patient**. The risk of tube dislodgment is increased with patient agitation and disorientation in addition to the need for patient transport.

*Id*. at 3.

---

[5] Indeed, there is no indication from Dr. Lee-Kong's CV that he would be qualified to offer an opinion on the proper use of a Hoyer lift in any event. *See* ECF No. [25] at 3-10.

Case No. 20-cv-21368-BLOOM/Louis

Defendant also provides the opinion of Dr. Rogoff, a board-certified radiologist. ECF No. [34-2]. While Dr. Rogoff agrees with Dr. Lee-Kong that the PGJ likely became dislodged during Fernandez's transfer, he also provides the following expert opinion:

> The catheter only needs to be retracted a few centimeters in order for the retention loop to exit the stomach and eventually completely dislodge the entire catheter. While this requires a decent amount of force, **it is certainly possible during a patient transfer or by the patient herself**. **Such an event** would not constitute negligence and **is not uncommon**.

ECF No. [34-1] (emphasis added).

Other than Plaintiff's characterization that Fernandez died "following the violent dislodgment" of her PGJ tube, *see* ECF No. [42] ¶ 2, which is not supported by any record evidence, Plaintiff has provided no testimony or evidence to establish the standard of care applicable to the movement of a patient with a PGJ tube using a Hoyer lift or to indicate that the standard of care was breached with respect to the movement of Fernandez in this case. Defendant has provided the transcript of Plaintiff's deposition, ECF No. [45-1], in which Plaintiff described how the Hoyer lift was used to lift Fernandez:

> Q. Okay. Describe for me, because I don't know how this lift works, describe for me what you observed, please.
>
> A. They started moving her, rolling her on the side, and then they put – it's like a chair, you know, it's made out of cloth, put it under her and then they rolled her back, then they hook it up and the hoist picks her up, then they put her in a wheelchair to take her to the bathroom. At that time she was – started moaning and crying and everything else. Moaning, everything.
>
> [. . .]
>
> Q. How soon after Ms. Fernandez being seated and that lift going up, how soon after did she start to complain, how much time went by?
>
> A. No time.
>
> Q. I'm sorry?

A. The minute they started moving her she started moaning.

Q. Was it when they moved her to the left or when they put her back –

A. When they first moved her she screamed, she went "ahhhh," like that. And then, after that, started moaning and moaning and hurting and hurting and banging on the bed. [. . .]

ECF No. [45-1] at 53, 57. This testimony fails to establish that the dislodgment of Fernandez's PGJ tube was "violent," as Plaintiff describes in a conclusory fashion. Nor is it sufficient to establish the applicable standard of a care or a breach of that standard, since Plaintiff is not competent to testify with respect to the standard of care. *See Lambert v. United States of Am.*, 198 F. App'x 835, 840 (11th Cir. 2006) (in the absence of medical evidence to establish the prevailing standard of care applicable to a health care provider, a plaintiff cannot "rely on his own conclusory allegations to survive summary judgment").

Accordingly, Plaintiff fails to identify a genuine issue of material fact with respect to his theory of negligence based upon the movement of Fernandez, and Defendant is entitled to summary judgment.

iii.   <u>Responding to Fernandez's reports of pain timely, stopping feedings upon reports of pain in the area of the PGJ tube, addressing the issues of peritonitis, ensuring proper follow-up and monitoring after removal of the PGJ tube, and deviating from the standard of care causing Fernandez's sepsis, pervasive peritonitis, and ultimately death</u>

Plaintiff's remaining theories of negligence relate to actions taken by Defendant after Fernandez was moved, but Plaintiff fails to present evidence with respect to the standard of care applicable to those remaining actions she contends were negligent. In fact, Dr. Lee-Kong's report expressly undermines Plaintiff's theories of negligence with respect to the actions taken by Defendant after movement of Fernandez. In his report, Dr. Lee-Kong opines that "[h]er care subsequent to this movement, including documentation of the confirmatory imaging and operative intervention, appear within the standard of care in the management of gastric perforation." ECF

No. [41-1] at 1. Thus, Dr. Lee-Kong's opinion is that Fernandez's care following the use of the Hoyer lift to move her met the standard of care.

In addition, Defendant's expert Dr. Rogoff opines that after the PGJ tube became dislodged, "the feedings were discontinued in a reasonable timeframe." ECF No. [34-1]. Similarly, Dr. Symons' report concludes that "[a]fter careful review of the medical records provided to me and based on my years of practice as a board-certified general surgeon and board-certified Surgical Critical Care Physician, I am quite confident in saying that the standard of care was met for this patient despite her unfortunate outcome." ECF No. [34-3 at 2].

Plaintiff has provided no evidence or testimony to rebut Defendants' experts' opinions, and therefore, there is no genuine issue of material fact with respect to Plaintiff's claim of negligence based on the failures to respond to Fernandez's reports of pain timely, to stop feedings upon reports of pain in the area of the PGJ tube, to address the issues of peritonitis, or to ensure proper follow-up and monitoring after removal of the PGJ tube.

## IV.    CONCLUSION

Because Plaintiff fails to present any expert evidence with respect to the standard of care applicable to the placement and securing of a PGJ tube or the proper use of a Hoyer lift to move a patient, and his own expert's opinion is that the standard of care was met with respect to actions taken subsequent to Fernandez's movement, there is no genuine issue of material fact as to whether the standard of care was breached in this case, and Plaintiff is unable to establish medical negligence as a matter of law.

Accordingly, the Motion, **ECF No. [35]**, is **GRANTED**. The Court will enter judgment in favor of Defendant by separate order. The Clerk of Court is directed to **CLOSE** this case.

Case No. 20-cv-21368-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 19, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record